199 So. 749

## CHANCELLOR v. STATE.

### 4 Div. 637.

Court of Appeals of Alabama.

Jan. 14, 1941.

Mulkey & Mulkey, of Geneva, for appellant.

Thos. S. Lawson, Atty. Gen., and Prime F. Osborn, Asst. Atty. Gen., for the State.

**RICE, Judge.**

Five or six officers of the law searched appellant's premises. One of same found a point bottle of rum—described by one of the officers as "punkin (sic) rum."

The finding of the sum was described by the Sheriff (who found it) as follows: "I found it at the back porch; I stepped from the well east; it was covered up; the well is three or four steps from his back porch; I don't know how far this liquor was from his back porch when I found it; coming right off the back porch right due south three or four steps of the well and then the whiskey, I found that about one good step of well, and then across there is about four or five steps; I would say about four steps from the liquor to the porch."

It was without dispute that "the yard back there (where the 'punkin (sic) rum' was found) is not enclosed all the way; there's not a fence right at the well and people could come in from the road in passing by and get water at any time they wanted to; people could come in there." And also that "there are neighbors that come there and get water; they come there often because they haven't any well and come there and get water."

Likewise without dispute was appellant's testimony that "no one lived there at that house except myself and family of seven and my *brother-in-law* who was staying with me when the liquor was found."

There was testimony, likewise undisputed, that one of the officers found in the "smoke house on appellant's premises," on this same occasion, "some eight or ten bottles and five or six gallon jugs"—all empty —probably some of the bottles of the "same kind," i. e. as the bottle containing the "punkin (sic) rum."

That is all.

Probably we can do no better than borrow, and use again, here, Judge Bricken's language, uttered for this Court in the opinion in the case of Scott v. City of Troy, 24 Ala.App. 453, 136 So. 432, to-wit: "But one question is presented on this appeal by the single assignment of error [but of course there was no need for an assignment of error, here—and was none] wherein it is insisted that the court erred to a reversal in refusing to the defendant the general affirmative charge requested in writing. Under the uniform decisions of this court and of the Supreme Court, this appellant was entitled to said charge, as there was no evidence adduced upon the trial of this case tending to connect her [him] with the commission of the offense with which she [he] was charged. It has many times been held that the mere finding of a bottle containing prohibited liquor upon the premises of a person, without any evidence tending to connect such person with the possession thereof, and without any evidence of guilty scienter, is not sufficient upon which to sustain a conviction for the possession thereof." And, as quoted by Judge Bricken in his opinion in the said Scott v. City of Troy case, from an earlier utterance by the now late, lamented, and much beloved Judge Wm. H. Samford, we may repeat, here: "Human liberty is too sacred and has been too dearly bought to authorize a conviction, except upon legal evidence connecting the defendant with the commission of the crime, and that beyond a reasonable doubt. Facts which would warrant a suspicion, however strong, do not overcome the presumption of innocence." See Tuggle v. State, 22 Ala.App. 89, 112 So. 540; Eldridge v. State, 24 Ala.App. 395, 135 So. 646; Wilbanks v. State, 28 Ala.App. 456, 185 So. 770; Campbell v. State, 28 Ala.App. 240, 182 So. 89; and many other cases that might be cited.

The judgment is reversed and the cause remanded.

Reversed and remanded.